**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT CINCINNATI**

UNITED STATES OF AMERICA,

                 Plaintiff,      :      Case No. 1:15-cr-119

                                         District Judge Susan J. Dlott
- vs -                              Magistrate Judge Michael R. Merz

CARMELLA V. SMITH,

                 Defendant.      :

**REPORT AND RECOMMENDATIONS**

This case is before the Court on Defendant Carmella Smith's Motion to Vacate under 29 U.S.C. § 2255 (ECF No. 252).

**Procedural History**

In November 2015, Ms. Smith was indicted by the grand jury for this District along with seven other people on a charge of conspiracy to distribute in excess of five kilograms of cocaine (Indictment, ECF No. 12). In March 2016 she agreed to plead guilty to that charge with the understanding she faced a mandatory minimum imprisonment term of five years and a maximum of forty years (Plea Agreement, ECF No. 104, PageID 194). There was no agreement or promise about sentence. *Id.* at PageID 198-99. The Agreement contained the standard integration clause:

1

> 17. This written Agreement embodies all of the agreements and understandings between the United States Attorney for the Southern District of Ohio and the defendant. No conversations, discussions, understandings, or other documents extraneous to the Agreement shall be considered part of this Agreement.

*Id.* at PageID 202. Judge Dlott accepted the Plea Agreement and Ms. Smith's guilty plea pursuant to that agreement in a Fed. R. Crim. P. 11 plea colloquy on April 7, 2016 (Transcript, ECF No. 130). Judge Dlott ordered a presentence investigation by the Probation Department; the Presentence Investigation Report ("PSR") was transmitted to Judge Dlott on October 19, 2016 (ECF No. 180). On March 16, 2017, after the parties had had an opportunity to submit sentencing memoranda, Judge Dlott conducted the sentencing hearing which resulted in the judgment of conviction (ECF Nos. 216, 223). The sentencing hearing has now been transcribed (ECF No. 254).

Ms. Smith took no appeal, but filed the instant Motion within one year of the sentence. She pleads that she received ineffective assistance of trial counsel in the following particulars:

> 1. Defendant's attorney did not object to the evidence that was presented during the sentencing hearing. This evidence was not included in Discovery and was not relevant to the Offense that defendant plead guilty to. It was prejudicial towards defendant's sentencing and defendant believed increased the sentence that was given. Defendant's offense level was 28 with a Criminal History of 1. The sentencing guidelines put defendant in a range of 78 - 97 months. Defendant was sentenced to 87 months.
>
> The evidence was presented by DEA agent John Pearson. While investigating a neighbor of the defendant's Agent Pearson intercepted a phone call between the defendant and the neighbor's girlfriend (Londa). Defendant advised Londa that DEA Agents were in her house and that her children were outside standing on the sidewalk. Londa said she was leaving work and was on her way home. Agent Pearson implied that defendant was a co-conspirator on the neighbor's drug case. There was no discovery
> submitted to defendant and no evidence connecting defendant to the neighbor.

2. Counsel did not advise defendant on Sentencing Guidelines and where the offense level and Criminal History category applied to the sentencing range.

3. Counsel did not review PSI/PSR with defendant and had no chance to object or to correct any information included or excluded.

4. Counsel misinformed the defendant about the plea agreement, where counsel told the defendant she was facing 5 years and the defendant thought she had an agreed sentence. One week before sentencing Counsel called defendant to inform that the Prosecution was seeking an upward departure to 103 months verses [sic] 60 months. A few days before sentencing counsel called defendant to advise that the Judge was not going to give an upward departure, but would give a downward departure.

5. Counsel called my cousin, Shawn Laws, who had been a client of counsel, and discussed defendant's case with him. This was done without defendant's permission.

(Motion, ECF No. 252, PageID 745-46.) Judge Dlott referred the § 2255 Motion to the undersigned Magistrate Judge shortly after it was filed (ECF No. 253).

## Analysis

The Motion is before the Court for initial review pursuant to Rule 4(b) of the Rules Governing § 2255 Proceedings which provides:

> The judge who receives the motion must promptly examine it. If it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion and direct the clerk to notify the moving party. If the motion is not dismissed, the judge must order the United States to file an answer, motion, or other

response within a fixed time, or take other action the judge may order.

The Sixth Amendment to the United States Constitution entitles a criminal defendant to the effective assistance of counsel in her defense. The governing standard for ineffective assistance of trial counsel was adopted by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984):

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687. In other words, to establish ineffective assistance, a defendant must show both deficient performance and prejudice. *Berghuis v. Thompkins,* 560 U.S. 370, 389 (2010), *citing Knowles v. Mirzayance,* 556 U.S.111 (2009).

With respect to the first prong of the *Strickland* test, the Supreme Court has commanded:

> Judicial scrutiny of counsel's performance must be highly deferential. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be

considered sound trial strategy."

466 U.S. at 689.

As to the second prong, the Supreme Court held:

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to overcome confidence in the outcome.

466 U.S. at 694. *See also Darden v. Wainwright*, 477 U.S. 168 (1986); *Wong v. Money,* 142 F.3d 313, 319 (6th Cir. 1998); *Blackburn v. Foltz*, 828 F.2d 1177 (6th Cir. 1987). *See generally* Annotation, 26 ALR Fed 218.

Each of Defendant's claims will therefore be analyzed in terms of whether there was deficient performance by her attorney and whether she was prejudiced by that failure.

**Failure to Object to Evidence at Sentencing**

In her first claim of ineffective assistance of trial counsel, Ms. Smith asserts her attorney performed deficiently by not objecting to evidence presented at sentencing consisting of an intercepted telephone call between her and a neighbor's girlfriend.

In reviewing the sentencing transcript, the Magistrate Judge finds that DEA Special Agent Jeremy Nissen (not "John Pearson" as identified in the Motion) testified to authenticate transcripts of intercepted telephone conversations obtained with a court order in the investigation of Ms. Smith's drug trafficking activities. Mr. Nissen identified various speakers on the calls, but never identified a call with a neighbor's girlfriend; the principal identified other person was Ms. Smith's cocaine supplier, co-defendant Raul Barocio, who had delivered a kilogram of cocaine to Ms. Smith's residence the night before she was arrested.

Nothing in the sentencing transcript supports even inferentially Ms. Smith's claim that such a call occurred or was called to the Court's attention at sentencing or argued to support an inference that she was engaged in the neighbor's drug dealing activities. Assistant United States Attorney Kadon, who represented the Government at sentencing, had some of the intercepts played in an effort to persuade the Court that Ms. Smith was involved with quantities of cocaine in excess of the "500 grams or more" she admitted to in pleading guilty or the 3.5 to 5 kilograms determined by the Probation Department (PSR ¶ 44). Mr. Kadon never argued that Ms. Smith was involved in a neighbor's drug trafficking activities or made any reference at all to a call between Ms. Smith and the neighbor's girlfriend.

It is not deficient performance for an attorney to fail to object to evidence presented at sentencing on which the Government does not rely in its argument. Nor has Ms. Smith shown any prejudice in that Judge Dlott recited what she was relying on in sentencing and it did not include any reference to participation in the neighbor's drug activities.

As part of this sub-claim, Ms. Smith asserts her sentencing guideline range was 78 to 97 months. The PSR calculated the sentencing range as 87 to 108 months and that is the range Judge Dlott found to be correct (Statement of Reasons, ECF No. 224, PageID 566).

**Failure to Advise on Sentencing Guidelines and Sentencing Range**

In her second sub-claim, Ms. Smith asserts her attorney provided ineffective assistance of trial counsel when he failed to advise her on the Sentencing Guidelines and how they applied to determine a sentencing range.

6

These assertions are belied by the record. The Plea Agreement itself advised her of the Sentencing Guidelines and includes the representation "[t]he defendant has thoroughly reviewed with her attorney how the Sentencing Guidelines might apply to this case and agrees that their application is appropriate." (ECF No. 104, PageID 198.) According to the PSR, Ms. Smith has had some college education and therefore could understand what she read and agreed to in the Plea Agreement. Moreover, during the change of plea hearing, after having been sworn to tell the truth, Ms. Smith said she was fully satisfied with the representation Mr. Deutch had provided her (Transcript, ECF No. 130, PageID 289). She discussed the application of the Sentencing Guidelines with Judge Dlott at some length, including the possibility of upward or downward departure. *Id.* at PageID 291-93.

A plea of guilty or no contest is valid if, but only if, it is entered voluntarily and intelligently, as determined by the totality of the circumstances. *Brady v. United States,* 397 U.S. 742, 748 (1970); *Boykin v. Alabama*, 395 U.S. 238, 242-44 (1969); *King v. Dutton*, 17 F.3d 151 (6th Cir. 1994); *Riggins v. McMackin*, 935 F.2d 790, 795 (6th Cir. 1991); *Berry v. Mintzes,* 726 F.2d 1142, 1146 (6th Cir. 1984). The determination of whether this plea was intelligently made depends upon the particular facts and circumstances of each case. *Johnson v. Zerbst,* 304 U.S. 458, 463 (1938); *Garcia v. Johnson*, 991 F.2d 324, 326 (6th Cir. 1993).

> A plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e. g. bribes).

*Brady v. United States*, 397 U.S. 742, 755 (1970). The voluntariness of a guilty or no contest plea is determined in light of all relevant circumstances surrounding the plea. *Brady*, 397U.S. at 749. If a prosecutor's promise is illusory, then a plea is involuntary and unknowing. *United States v. Randolph*, 230 F.3d 243, 250–51 (6th Cir. 2000). However, where a defendant is "fully aware of the likely consequences" of a plea, it is not unfair to expect him to live with those consequences. *Mabry v. Johnson*, 467 U.S. 504, 511 (1984). A plea-proceeding transcript which suggests that a guilty or no contest plea was made voluntarily and knowingly creates a "heavy burden" for a petitioner seeking to overturn his plea. *Garcia v. Johnson*, 991 F.2d 324, 326–28 (6th Cir. 1993). Where the transcript shows that the guilty or no contest plea was voluntary and intelligent, a presumption of correctness attaches to the state court findings of fact and to the judgment itself. *Id.* at 326–27.

A court cannot rely on the petitioner's alleged "subjective impression" "rather than the bargain actually outlined in the record," for to do so would render the plea colloquy process meaningless. *Ramos v. Rogers*, 170 F.3d 560, 566 (6th Cir. 1999). If the plea colloquy process were viewed in this light, any defendant who alleged that he believed the plea bargain was different from that outlined in the record would have the option of withdrawing his plea despite his own statements during the plea colloquy indicating the opposite. *Id.*

The Plea Transcript and the Plea Agreement itself confirm that Ms. Smith swore she understood the Sentencing Guideline regime and had discussed it with her attorney. She cannot not contradict those solemn representations made under oath.

**Failure to Review the Presentence Report and Lack of Opportunity to Object**

In her third sub-claim Ms. Smith asserts her attorney did not discuss her PSR with her and the defense was given no opportunity to object. Her again the record completely belies these assertions. The docket shows that Mr. Deutch had an opportunity to file and did file a Sentencing Memorandum after the PSR was provided (ECF No. 199). The PSR has attached to it Mr. Deutch's objections which were considered by the Probation Officer and again specifically considered by Judge Dlott at sentencing and ruled on by her. During the sentencing hearing, Ms. Smith confirmed that she had seen all the documents the Government was presenting there (Transcript, ECF No. 254, PageID 763). Mr. Deutch indicated there were no objections to the PSR other than those already noted, *Id.* at PageID 764. The third sub-claim is therefore without merit.

**Attorney Misinformation about the Plea Agreement and Expected Sentence**

In her fourth sub-claim, Ms. Smith claims her attorney misinformed her about the Plea Agreement where he told her she was facing five years and she thought she had an agreed sentence. If Mr. Deutch told Ms. Smith she was facing five years as she alleges, he advised her accurately because the offense to which she pleaded guilty carried a mandatory minimum five years imprisonment. The Plea Agreement itself says that and Judge Dlott repeated the mandatory minimum in the plea colloquy.

Ms. Smith says she thought she had an agreed sentence, but the Plea Agreement expressly says there is no agreed sentence (ECF No. 104, PageID 198, ¶ 8: "There is no agreement as to what the sentence will be.")

9

Ms. Smith asserts her attorney told her a week before sentencing that the Government was seeking an upward departure from the guideline range that would result in a sentence of 103 months. As is made clear by the transcript of sentencing, the Government was initially seeking a departure which would have resulted in a sentence of 157 months, but backed down to 131 months after Ms. Smith's acceptance of responsibility. But even supposing Mr. Deutch gave Ms. Smith an inaccurate low number for what the Government was seeking, there is no prejudice because Judge Dlott not only did not depart upward, but she imposed a sentence of 87 months which was at the very bottom of the guideline range.

**Unauthorized Attorney Communication**

Ms. Smith's fifth and last sub-claim is that her attorney called her cousin Shawn Laws, who had been a client of Mr. Deutch, and discussed Ms. Smith's case with him without her permission.

Ms. Smith does not say what the communication was, so there is no allegation that Mr. Deutch somehow breached attorney-client confidentiality. It is of course not uncommon for defense counsel to contact family members to provide support for leniency and a number of Ms. Smith's family did just that at sentencing. Thus this sub-claim does not on its face even alleged any deficient performance by counsel.

More importantly, Ms. Smith does not allege any prejudice from the contact. Even if Mr. Deutch was not authorized to speak with Mr. Laws and did breach confidentiality in the process, this would not amount to ineffective assistance of trial counsel unless it somehow hurt Ms. Smith's case.

**Conclusion**

The § 2255 Motion either fails to state a claim upon which relief can be granted or the claim is definitively refuted by the record in this case. It is therefore respectfully recommended that the Motion be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied a certificate of appealability and the Court should certify to the Sixth Circuit that any appeal would be objectively frivolous and therefore should not be permitted to proceed *in forma pauperis*.

January 5, 2018.

s/ *Michael R. Merz*
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by mail. .Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 153-55 (1985).